UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CRYSTAL STEEL FABRICATORS, INC.** : <br> 9317 Old Racetrack Road : <br> Delmar, DE 19940 : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **CREATION STEEL FABRICATORS, INC.** : <br> 6400 Georgia Ave NW, Suite #10 : <br> Washington, DC 20012 : <br> : <br> <u>Serve:</u> : <br> : <br> **Marshall Datcher** : <br> **1732 17th St NE** : <br> **Washington, DC 20002** : <br> : <br> **Defendant.** : | **CIVIL ACTION NO: 24-2739** |

## COMPLAINT

Plaintiff, Crystal Steel Fabricators, Inc. ("Crystal Steel"), by and through undersigned counsel, hereby files this Complaint against Defendant Creation Steel Fabricators, Inc. ("Creation Steel"), and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) over this action because the amount in controversy exceeds $75,000, and the parties are all citizens of different states.

2. Venue is proper in this District pursuant to 28 U.S.C. § 3191(b)(1)-(2), as Creation Steel resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3. This Court also has jurisdiction, and venue is proper in this District, pursuant to Section 16 of the parties' Subcontract, as discussed below.

4. This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justiciable nature exists between the parties as to whether Creation Steel must defend, indemnify, and hold harmless Crystal Steel.

## **PARTIES**

5. Crystal Steel is a Delaware corporation with its principal place of business located at 9317 Old Racetrack Road, Delmar, Delaware 19940.

6. Crystal Steel is registered to do business in the District of Columbia.

7. Upon information and belief, Creation Steel is a District of Columbia corporation with its principal place of business located at 6400 Georgia Ave NW, Suite #10, Washington, DC 20012.

8. All conditions precedent to the filing of this action have been satisfied or waived.

## **FACTS**

**General Background**

9. On or about October 27, 2021, Crystal Steel, as subcontractor, and The Whiting-Turner Contracting Company ("Whiting-Turner"), as general contractor, entered into a subcontract for Crystal Steel's supply and installation of miscellaneous metals and other work at a project located at 125 E Street NW, Washington, DC 20001, and referred to as the McCourt School of Public Policy (the "Project"). The Project Owner was Georgetown University ("GU").

10. On or about June 16, 2023, Crystal Steel and Creation Steel entered into a Subcontract Agreement whereby Creation Steel agreed to perform certain steel erection and other work at the Project (the "Subcontract"). A true and accurate copy of the Subcontract is attached hereto as Exhibit 1.

11. Pursuant to Section 1(a) of the Subcontract, Creation Steel agreed to "provide materials, supervision, tools, supplies, labor, plant, equipment and all other things necessary for performance and acceptance of the work described in Exhibit A and work incidental thereto (the "**Work**")." (emphasis in original).

12. Pursuant to Section 1(c) of the Subcontract, Creation Steel agreed that, "[w]ith respect to the Work, Subcontractor assumes towards Crystal all obligations, risks and responsibilities which Crystal has assumed toward the General Contractor."

13. Pursuant to Section 3(f) of the Subcontract, Creation Steel agreed that "Crystal may withhold amounts otherwise due under this agreement or any other agreement between the parties to cover Crystal's reasonable estimate of any costs or liability Crystal has incurred or may incur for which Subcontractor may be responsible."

14. Pursuant to Section 5 of the Subcontract, Creation Steel agreed that:

> **Warranties.** Subcontractor warrants its work hereunder to Crystal on the same terms, and for the same period, as Crystal warrants the work to the General Contractor under the Prime Contract. With respect to the Work, Subcontractor shall assume all warranty obligations and responsibilities of Crystal under the Prime Contract. Subcontractor agrees to cure, without cost to Crystal, any and all defects, which appear or are discovered either before or after acceptance or payment. Upon notice in writing of the existence and nature of such defects or damage, Subcontractor shall proceed immediately to repair, replace, or otherwise correct any defects and damage resulting therefrom. Subcontractor shall be responsible for all costs incurred in correcting or replacing any work or materials.

15.     Pursuant to Section 7 of the Subcontract, Creation Steel agreed that:

**Safety; Site Obligations.** (a) Subcontractor shall take all necessary precautions to properly protect the Work and the work of others from damage caused by Subcontractor's operations. If Subcontractor causes damage to the Work or the work of others, Subcontractor shall promptly remedy such damage to the satisfaction of Crystal, or Crystal may remedy the damage and deduct the cost thereof from any amounts due or to become due to Subcontractor. Subcontractor shall be liable for any damages or losses which may be incurred.

(b) Subcontractor shall comply with the safety requirements set forth or referenced in the Prime Contract. Such requirements are set forth in Exhibit E. References in Exhibit E to the General Contractor shall be deemed to refer to Crystal and, where appropriate, the General Contractor. Subcontractor further agrees to comply with the Federal Occupational Safety and Health Act of 1970, and all subsequent revisions and amendments, as well as all other applicable health and safety laws and regulations. Subcontractor agrees that is has no right of recourse whatsoever against Crystal relating to the condition of the site.

16.     Pursuant to Section 11 of the Subcontract, Creation Steel agreed that:

**Indemnification; Liability.** (a) To the fullest extent permitted by law, Subcontractor agrees to defend, indemnify and hold harmless Crystal, the General Contractor and Owner, and any other party whom Crystal has agreed to defend, indemnify and hold harmless, as well as each of their officers, directors, partners, agents, servants, employees, successors and assigns ("**Indemnitees**") from and against any and all claims, damages, losses, costs and expenses of any kind, including but not limited to attorneys' fees, incurred by reason of any liability for damages because of bodily injury, including death resulting from such injuries, or property damage to real and personal property of any kind whatsoever, sustained by any person or persons, whether employees of Subcontractor or otherwise, resulting from, arising out of or occurring in connection with the Work provided under this agreement.

(b) Subcontractor agrees that the obligation to defend, indemnify and hold harmless, as described above, specifically includes the obligation to defend, indemnify and hold harmless the Indemnitees for the Indemnitees' own negligence or fault, excepting from the foregoing the sole negligence or fault of any Indemnitee if prohibited by law.

(c) Subcontractor agrees that the obligation to defend commences when a claim is made against an Indemnitee, even if Subcontractor disputes its obligation to indemnify and hold harmless. The defense shall be provided

4

  through counsel chosen by the Indemnitee, and Subcontractor agrees to pay for the defense of an Indemnitee upon demand.

  (d) The obligation to defend, indemnify and hold harmless, as described above, survives completion or acceptance of the Work.

(emphasis in original).

  17. Pursuant to Section 13 of the Subcontract, Creation Steel agreed that "[a]ny enumeration of Crystal's right and remedies set forth in this agreement is not intended to be exhaustive. Crystal's exercise of any right or remedy under this agreement does not preclude the exercise of any other right or remedy."

  18. Pursuant to Exhibit A of the Subcontract, Creation Steel agreed that it would "[p]rovide any and all erection necessary or incidental to erect structural steel, decking, and shear studs as described in the specification sections and drawings shown below," including, among other things, "[p]rovide fire blankets as necessary to protect existing structures" and "protect work in place and [Creation Steel] shall repair and restore any item damaged by the Subcontractors [*sic*] actions."

**<u>Creation Steel's Breach of the Subcontract and Damage to Property</u>**

  19. Creation Steel performed the work involving the welding of parapet framing steel on the roof and upper levels of the building from April 2023 through November 2023.

  20. During this work, Creation Steel improperly damaged Project work and property below. The damage caused by Creation Steel included burn marks and other damage to the curtain wall insulating glazing units (the "IGUs") and glass panels on Level 8 of the Project.

  21. As a result of Creation Steel's damage to Project work and property, Whiting-Turner performed significant remediation work, including the replacement of IGUs and glass panels.

22. As a result of the remediation work performed or to be performed, Whiting-Turner backcharged Crystal Steel $663,095.16 due to Creation Steel's damage to Project work and property and has withheld an additional roughly $900,000.00 in payments owed to Crystal Steel on other projects, all due to Creation Steel's damage to Project work and property.

23. As of September 17, 2024, Whiting-Turner's latest estimate of total costs to perform the above-referenced remedial work is $1,507,653.21.

24. Crystal Steel has repeatedly requested that Creation Steel defend, indemnify, and hold harmless Crystal Steel against the claims, damages, losses, costs and expenses, including but not limited to attorneys' fees, incurred by reason of Creation Steel's damage to property. However, Creation Steel has failed and refused to defend, indemnify, and hold harmless Crystal Steel.

## COUNT I
## BREACH OF CONTRACT

25. Crystal Steel incorporates the foregoing paragraphs as if set forth at length herein.

26. The Subcontract is a valid and enforceable agreement between Crystal Steel and Creation Steel.

27. Crystal Steel performed its obligations under the Subcontract in all material respects.

28. Creation Steel breached its obligations under the Subcontract, including by the following:

    a. Creation Steel failed to provide materials, supervision, tools, supplies, labor, plant, equipment, or other things necessary for performance and acceptance of the work;

    b. Creation Steel failed to repair, replace, or otherwise correct defects and damage resulting from its work;

6

    c.    Creation Steel failed to take all necessary precautions to properly protect its work and the work of others from damage caused by Creation Steel's operations and actions;

    d.    Creation Steel failed to comply with safety requirements;

    e.    Creation Steel failed to defend, indemnify, and hold harmless Crystal Steel against the claims, damages, losses, costs and expenses, including but not limited to attorneys' fees, incurred by reason of Creation Steel's damage to property;

    f.    Creation Steel failed to pay Crystal Steel damages or losses incurred by Crystal Steel as a result of Creation Steel's failure to perform in accordance with the Subcontract; and

    g.    Creation Steel failed to perform its work in accordance with the applicable standard of care.

29.    As a direct and proximate result of Creation Steel's material breaches of the Subcontract, Crystal Steel has suffered damages in an amount not less than $1,563,095.16.

WHEREFORE, Plaintiff Crystal Steel Fabrication, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Creation Steel Fabrication, Inc. in an amount not less than $1,563,095.16, plus pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT II
## DECLARATORY JUDGMENT

30.    Crystal Steel incorporates the foregoing paragraphs as if set forth at length herein.

31.    An actual and justiciable controversy exists between Crystal Steel and Creation Steel regarding the scope and extent of Creation Steel's obligations to defend, indemnify, and hold harmless Crystal Steel.

32. Pursuant to the Subcontract and equitable principles, Creation Steel has a duty to defend, indemnify, and hold harmless Crystal Steel against the claims, damages, losses, costs and expenses, including but not limited to attorneys' fees, incurred by reason of Creation Steel's damage to property.

33. Crystal Steel is entitled to a declaration regarding Creation Steel's duty to defend, indemnify, and hold harmless Crystal Steel.

WHEREFORE, Plaintiff Crystal Steel Fabrication, Inc. respectfully requests that this Court:

A. Declare that Creation Steel must defend, indemnify, and hold harmless Crystal Steel against the claims, damages, losses, costs and expenses, including but not limited to attorneys' fees, incurred by reason of Creation Steel's damage to property, including amounts that have been or maybe charged by Whiting-Turner to Crystal Steel.

B. Award Crystal Steel is attorneys' fees and/or costs.

C. Award such other and further as the Court deems just and proper.

Date: September 25, 2024

                     **COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.**

By: */s/ Matthew C. Long*

        **Matthew C. Long, Esq.**
        **D.C. Bar No. 1048991**
        **mlong@cohenseglias.com**
        **Jason A. Copley, Esq.**
        (***pro hac vice pending***)
        900 Seventh St., NW, Suite 725
        Washington, DC 20001
        Tel: (202) 466-4110
        *Counsel for Plaintiff,*
        *Crystal Steel Fabricators, Inc.*